[Crim. No. 5547. Second Dist., Div. Three. Jan. 10, 1957.]

THE PEOPLE, Respondent, v. JOE VACA et al., Defendants; GILBERT LECHUGA, Appellant.

Angelo L. Baldwin for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant Lechuga, Joe Vaca and Jesse Barrera were convicted, in a jury trial, of three counts of forcible rape. Lechuga, 18 years of age, was committed to the Youth Authority. Lechuga appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the court erred in instructing the jury; and that the testimony of the prosecutrix was inherently improbable.

On March 4, 1955, about 8 p. m., Patricia, an unmarried girl 14 years of age, and her girl friend LaVeta went to a dance at a schoolhouse. While they and Eddie Alfaro, LaVeta's friend, were standing outside the schoolhouse, Donald Matheny, who was Patricia's friend, drove up in an automobile. Several Mexican boys were in the automobile with him. He asked Patricia to go with him. She declined, stating there were too many boys in the automobile. Then Donald drove away. Patricia asked Eddie where Donald had gone. About 9 p. m. Patricia, LaVeta and Eddie went away from the schoolhouse, in Eddie's automobile, and after driving about 15 minutes they arrived at a place in a field where a bonfire was to be started. Several boys were at that place. Eddie stopped his automobile near Donald's automobile. Eddie told Donald that Patricia wanted to talk to him. After Donald and Patricia had talked about five minutes, she entered Donald's automobile, which was a two-door Buick, and he drove around the corner and parked. They sat in the automobile and talked about 10 minutes. Then "a bunch of Mexican boys got around the car." Patricia locked the door of the automobile, on the side where she was sitting. Donald got out of the automobile and talked, in Spanish, to the boys. Then Patricia got out, on the driver's side of the automobile. A boy asked her where she was going. She said she was going where LaVeta and Eddie were. Then the boys pushed her into the back seat of Donald's automobile. When she was pushed into the automobile there were three boys in the back seat and four boys in the front seat. Donald got into the driver's seat. She screamed, and they threw a coat over her head and tore and pulled her underclothing off. The automobile was driven a short distance, and then the coat was removed from her head. After the automobile was stopped, about 17 boys had sexual intercourse with her without her consent. She struggled, screamed and cried. Part of the time the coat was over her head. They struck her several times. Every time she screamed one of the boys would hit

her. When she was screaming, Joe Vaca had hold of her leg. He had a needle and a bottle, and he told her that if she did not keep quiet he would shoot the needle in her leg.

Patricia testified that defendants Lechuga, Vaca and Barrera, and other boys by the names of Mugica, S. Alfaro and Villareal, were some of those who had sexual intercourse with her on said occasion. (Barrera and the three boys last referred to were charged, in another information, with forcible rape and the crime against nature. The two causes were consolidated for trial and were tried together.) She also testified that Lechuga (appellant) ''is the one that kept hitting me. He hit me in the temple once with his fist and kept slapping me around.'' After being at that place approximately two hours, Donald took her, in his automobile, to Eddie's automobile. Eddie and LaVeta took her to her home, arriving there about midnight. On the way home she told LaVeta and Eddie what had happened. When she arrived home she did not tell her mother what had happened, because the boys had threatened her. The next morning she told her mother, and they went to a physician who examined Patricia. Patricia testified that, prior to said March 4, she had not had sexual intercourse.

Dr. Julien, the physician who examined Patricia, testified that he examined her on March 5, 1955; he found contusions on her temple, the back of her head, her chest, arms, thigh, and knee; he found a laceration on her lip; he found multiple scratches on her buttocks, thighs and hands; there were traumatic injuries to her private parts; in his opinion the hymen lacerations were not more than 12 to 24 hours old, and she was a virgin prior to those lacerations.

A deputy sheriff testified that, in a conversation with Lechuga on March 8, 1955, Lechuga said that he had not been present at the scene of the alleged occurrences and he did not know anything about the affair; the deputy (witness) told Lechuga that other persons involved in the offense had stated that Lechuga was there, and that Joe Vaca had said that he and Lechuga had walked together to Donald Matheny's car; that Lechuga then said that he had been on one side of the car looking through the windows at the time Patricia had an act of intercourse with Mugica and Villareal; that Lechuga denied that he had intercourse with her.

Defendant Lechuga testified that about 10:30 o'clock on the evening involved here he and Joe Vaca arrived, by automobile, at Hawaiian Gardens (the area where there was

to be a bonfire); they parked the automobile, walked into a field where there was another automobile, and looked in the automobile and saw who was there; he (Lechuga) was on the driver's side of the automobile when he was looking to see what was going on; he saw Donald Matheny and Gaxiola in the front seat, and a girl and Mugica in the back seat; Lechuga thought Mugica was having sexual intercourse with the girl; Lechuga and Vaca stayed there about half a minute and then went home.

Joe Vaca testified in substance the same as Lechuga testified.

Jesse Vaca (brother of defendant Joe Vaca) testified that he was in Matheny's car about 45 minutes; he did not see Lechuga at Matheny's car.

Gaxiola and Johnny Barrera (brother of defendant Jesse Barrera) testified that they did not see Lechuga there.

Appellant contends that the court erred in giving the following instruction: "In this connection you are instructed that, if an act of forcible rape or the infamous crime against nature is in progress and if one man is the actual perpetrator of either of those crimes against a female person, any other confederate of the perpetrator who, knowingly and with criminal intent, and in concert with the perpetrator, stands by, without any show of resentment against the perpetrator of the acts and without any show of concern for the female person, and who stands by in sympathy with, or in encouragement of such act of rape or crime against nature, or who keeps watch against intrusion, each such confederate has aided and abetted the actual perpetrator and is therefore a principal in such crime. Thus, if you find that, in this manner, any defendant in this case aided and abetted any other defendant in the commission of one or more of the acts alleged, you may find him guilty as a principal." Appellant argues to the effect that the instruction was not applicable to the facts involving appellant; there was evidence that appellant was not present; and there was no evidence that he aided or abetted in the commission of a crime. In the present case a group of boys surrounded the automobile in which Patricia was sitting with Matheny, and then the boys began to commit acts of intercourse upon her. She testified that appellant, Vaca, Barrera, Mugica, S. Alfaro, Villareal, and several other boys had intercourse with her; all the boys hit her, and every time she screamed one of the boys would hit her; appellant hit her in the temple with his fist and he is the

one who kept hitting her and slapping her around; all the boys threatened her if she told what happened. Appellant admitted that he and Vaca were at the automobile at the same time. It was not error to give the instruction. (See *People* v. *Mummert*, 57 Cal.App.2d 849, 855 [135 P.2d 665]; and *People* v. *Griffin*, 106 Cal.App.2d 531, 536 [235 P.2d 424].)

Appellant also contends that the testimony of Patricia was inherently improbable. After stating this contention appellant quotes various portions of the testimony of Patricia, and he refers to portions of the testimony of Jesse Barrera, Jesse Vaca, Eddie Alfaro, and the physician. Appellant does not present any argument with respect to those quotations or references. One of such quotations from the testimony of Patricia is: "The only one I see, the only one I can really identify is the one in the purple shirt." The person in the purple shirt, so referred to, was defendant S. Alfaro. Although appellant has not presented any argument with respect to that quotation, he apparently intended that the quotation should be understood to mean that Patricia testified that the only one she could identify, among those who had intercourse with her, was S. Alfaro. The quotation should not be so understood. That testimony, so quoted, related to whether or not she observed a defendant at the bonfire (before the acts of intercourse). The reporter's transcript shows that counsel for Jesse Barrera, in cross-examining Patricia, asked her if she had seen Barrera "around the bonfire before that [referring to intercourse with him]?" She replied, "No." While she was answering a question as to when she first saw Barrera, she was interrupted by counsel. Then the following occurred: "The Court: It sounded like you started to answer one and were interrupted. Had you finished your answer? The Witness: He asked me if I seen him around the bonfire. The Court: Had you finished your answer to his questions? The Witness: No. The Court: You may finish your answer. . . . The Witness: The only one I see, the only one I can really identify is the one in the purple shirt." It is clear that she was testifying that S. Alfaro was the only one she could identify as having been at the bonfire. She identified appellant as one of those who had intercourse with her. She said he kept hitting her and slapping her around. She identified several of the other boys who had intercourse with her, including defendants Vaca

and Barrera. Her testimony was not inherently improbable.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.