**Jimmy ELIX, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–573.**

Court of Criminal Appeals of Oklahoma.

Sept. 21, 1987.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., P. Kay Floyd, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Jimmy Elix, was tried and convicted in the District Court of Comanche County, for the crime of Rape in the First Degree, After Former Conviction of Two Felonies, pursuant to 21 O.S.1981, § 1114 and 21 O.S.1981, § 51(B), and Burglary in the First Degree, After Former Conviction of Two Felonies, pursuant to 21 O.S.1981, § 1431 and 21 O.S.1981, § 51(B), in Case No. CRF–84–601 and received terms of imprisonment of fifty (50) years and thirty (30) years, respectively, the sentences to run consecutively.

On December 26, 1984, at approximately 11:00 p.m., the prosecutrix, B.B., and her five children were in bed at their home in Lawton, Oklahoma. Her husband was at work, a fact known to his friends. At this time, she heard a knock at the front door and went to answer it. She asked the person at the door to identify himself, and a man responded that it was her brother-in-law, V.B. When she requested him to step to a window to confirm this, the man began violently kicking in the front door of the house. Although the residence was not equipped with a telephone, a fact which a past visitor to the house would be aware of, B.B. screamed that she was calling the police. The man, however, continued kicking at the door, eventually gaining entry to the house. B.B. ran down a hallway into

the kitchen in search of a knife to use to defend herself and her family. The intruder followed her, tripping over a dresser which was partially blocking the kitchen doorway. At that moment, he partially lifted off the mask he was wearing in order to see, allowing the prosecutrix to see in the light of a kitchen light bulb that the man was Jimmy Elix, a friend of her husband and a past visitor to her house.

Appellant then picked up a knife from the sink, unscrewed the light bulb in the kitchen, seized B.B., and dragged her down the hallway into the living room. B.B. was struggling with the appellant, and he threatened to kill her. Then the prosecutrix heard her children in the next room and fearing for their safety, ceased struggling. Shortly thereafter, appellant achieved penetration. After he had completed the sexual act, appellant demanded money. To show him that she had no money, the prosecutrix went into another room to get her purse, but when she returned, the appellant had left. B.B. then went next door and telephoned the police.

When the police arrived they found the prosecutrix hysterical. They were able, however, to ascertain from her statements that her assailant was a friend of her husband named "Jimmy," and she gave a general description. When her husband returned home from work, he told officers that the description matched that of the appellant, Jimmy Elix. B.B. was transported to the hospital where she underwent a rape examination and forensic samples were taken. While at the hospital, she was shown a set of five "mug shots", and identified the photograph of the appellant as being that of her assailant. The appellant was arrested shortly afterwards at a nearby bar.

Appellant's first assignment of error is that the instruction given by the trial judge regarding appellant's alibi defense unfairly prejudiced appellant's case resulting in fundamental error. Appellant claims that the instruction fails to state that the burden of proof is upon the State when a defendant puts forward an alibi defense.

Initially, we must note that by his failure to object to this instruction at trial, appellant has waived consideration of this issue on any ground other than fundamental error. *Glass v. State*, 701 P.2d 765 (Okl.Cr. 1985); *Stevenson v. State*, 637 P.2d 878 (Okl.Cr.1981); and *Kelsey v. State*, 569 P.2d 1028 (Okl.Cr.1977).

■ The instructions as a whole in this case relate the applicable law placing the burden of proof squarely upon the State. Any ambiguity in the particular complained of instruction was cured by the clear language of the instructions in their entirety. *Tate v. State*, 664 P.2d 1036 (Okl.Cr.1983); *Garcia v. State*, 639 P.2d 88 (Okl.Cr.1981); and *Holloway v. State*, 550 P.2d 1352 (Okl. Cr.1976). This assignment of error is consequently without merit.

Appellant next contends that the trial judge erred in not providing the jury with the proper verdict forms and punishment instructions. Although he did not object at trial, appellant now objects to the fact that the verdict forms provided for the jury by the trial judge all included the notation "After the Former Conviction of Two Felonies."

The determination of whether a convicted defendant merits sentencing under the "Habitual Criminal Act," 21 O.S.1981, § 51, is normally a jury question; however, this Court has held that when a defendant admits in testimony that he has former felony convictions, the issue of former conviction ceases to be a question of fact for jury determination. *Wilson v. State*, 637 P.2d 900 (Okl.Cr.1981); *Reed v. State*, 580 P.2d 159 (Okl.Cr.1978); and *Jones v. State*, 527 P.2d 169 (Okl.Cr.1974).

■ Because appellant did testify on the witness stand that he did have two former felony convictions, the use of the verdict forms and punishment instructions employed at appellant's trial does not constitute error. This assignment of error is without merit.

Appellant's third assignment of error is that the trial court committed fundamental error in admitting testimony of a police officer concerning the prosecutrix's identi-

fication of appellant at the hospital from the set of photographs. The prosecutrix later identified at trial the appellant as her assailant. The appellant did not object to the police officer's testimony at trial, thereby waiving all review except on the grounds of fundamental error.

■ When a defendant fails to object to testimony from a police officer about a victim's extra judicial identification of that defendant, this Court has held that the admission of such testimony does not constitute reversible error. *Christian v. State*, 708 P.2d 1133 (Okl.Cr.1985): and *Towning v. State*, 521 P.2d 415 (Okl.Cr. 1974).

Because the appellant did fail to object to this testimony at trial, this assignment of error is without merit.

In his fourth assignment of error the appellant contends that fundamental error occurred when the State questioned appellant's alibi witnesses about why they had not come forward with their evidence before trial. Appellant claims that these questions constitute a violation of his Fifth Amendment right to remain silent. Appellant has waived his claim to anything but fundamental error by his failure to contemporaneously object to the complained of questions at trial.

■ In *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984), cert. den. 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984), this Court held that when a defendant fails to object to a prosecutor's comments about defendant's failure to testify, negatively affecting defendant's Fifth Amendment right to remain silent, no fundamental error occurs. Similarly, in *Thomas v. State*, 675 P.2d 1016 (Okl.Cr.1984), cert. den. 466 U.S. 942, 104 S.Ct. 1923, 80 L.Ed.2d 469, (1984), this Court held that no fundamental error occurs when the State impunes the veracity of a defendant's alibi witnesses during closing arguments if the defendant fails to object to these comments.

Again, because the appellant failed to object to these questions at trial, this assignment of error is without merit.

Appellant's fifth assignment of error is that the trial court committed fundamental error in allowing the admission of forensic blood tests into evidence. Appellant contends that the results of such tests are too unreliable to have any probative value in a court of law, and consequently should not be admitted into evidence. The appellant does not challenge the chain of custody of the blood samples.

Appellant has waived any objection except for that of fundamental error because of his failure to object to the admission of this evidence at trial. *Johnson v. State*, 611 P.2d 1137 (Okl.Cr.1980), cert. den. 449 U.S. 1132, 101 S.Ct. 955, 67 L.Ed.2d 120 (1981), reh'g den. 450 U.S. 1026, 101 S.Ct. 1734, 68 L.Ed.2d 221 (1981); and *Castleberry v. State*, 522 P.2d 257 (Okl.Cr.1974), cert. den. 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

■ This Court has long held that the admission of evidence at trial is within the discretion of the trial judge, and this Court will not find reversible error except where that discretion has been abused. *Behrens v. State*, 699 P.2d 156 (Okl.Cr.1985); and *Camp v. State*, 664 P.2d 1052 (Okl.Cr. 1983). We find that no such abuse of discretion exists in this case.

The introduction into evidence of blood, hair, and semen samples taken in an examination of the victim and the use of expert witnesses to link these samples with hair and blood samples taken from the defendant is a common practice in sex crime prosecutions. It is a practice used to corroborate the testimony of a prosecutrix both as to the fact that the sexual act did occur and to her identification of the defendant as her assailant. See generally *Annot.* 2 A.L.R.4th 500 (1980). It is a practice which is so seldom objected to that we can find no prior cases in Oklahoma where an objection to the general validity of such tests to corroborate victim's testimony has been raised.

In a related area, this Court has previously ruled that blood test evidence used by a defendant in an attempt to show that blood at the scene of a homicide was his blood and not that of the victim, is admissi-

ble only where the defendant has laid the groundwork for such evidence by showing that he had lost blood at the crime scene. *Hendricks v. State,* 296 P.2d 205 (Okl.Cr. 1956).

In an instructive case, the California Court of Appeals, in *People v. Lindsey,* 84 Cal.App.3d 851, 149 Cal.Rptr. 47, 2 A.L. R.4th 485 (1978), held that the use of blood sample evidence is generally admissible at a criminal trial. See also *Shanks v. State,* 185 Md. 437, 45 A.2d 85 (1945); and *People v. Mummert,* 57 Cal.App.2d 849, 135 P.2d 665 (1943). That court then adopted the guideline on when such evidence is admissible at a criminal trial originally expressed in *Commonwealth v. Mussoline,* 429 Pa. 464, 240 A.2d 549 (1968). This guideline states:

'Mere proof that a criminal defendant shares a blood type with that of samples found near the crime scene is legally irrelevant to show that the defendant was in fact present at the scene of the crime without some *additional,* independent evidence *tending* to show either (1) that the man who committed the crime did lose blood in the process or (2) that the defendant was present at the scene. In short, blood-type evidence such as this can only be used to *corroborate* other evidence of the defendant's whereabouts at the crucial time.' (Emphasis in original)

*People v. Lindsey,* 84 Cal.App.3d at 866, 149 Cal.Rptr. at 56. 2 A.L.R.4th at 498, quoting *Commonwealth v. Mussoline,* 240 A.2d at 551.

Since the blood tests in this case were used only to corroborate the prosecutrix's testimony, we find that their use as evidence was well founded and there is no error in their admission into evidence.

Appellant's sixth and final assignment of error claims that the trial court erred in issuing a ex parte order compelling appellant to give the State samples of his saliva, pubic hair, and blood for testing. The probable cause given in support of the request for this order was that appellant had been identified by the prosecutrix as her assailant. Appellant contends that this or-

der compelling him to submit to testing is a violation of his Fourth Amendment rights and constitutes an illegal search.

■ In *Cole v. Parr,* 595 P.2d 1349 (Okl. Cr.1979), this Court recognized the balancing test which a trial judge must engage in to determine whether the State's request for a defendant's tissue samples is a valid request respecting defendant's constitutional rights. The trial judge must balance whatever probative value the evidence may have in the case against the defendant's constitutionally protected expectation of personal privacy and dignity. In applying this standard to particular cases, this Court has ruled that upon the establishment of probable cause that a defendant has committed the crime, the State does not violate his constitutional rights by obtaining a warrant to compel him to supply the State with hair, saliva, and blood samples. *Pyle v. State,* 645 P.2d 1390 (Okl. Cr.1982).

In this case, probable cause was established by the State in its affidavit for the ex parte order by the victim's independent identification of the appellant as her attacker. Consequently, the order is constitutionally valid and this assignment of error is without merit.

Finding no error meriting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., concurs in results.