**Jerald Wayne HARJO, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–88–888.

Court of Criminal Appeals of Oklahoma.

July 13, 1994.

Order Denying Rehearing
Oct. 25, 1994.

As Corrected Dec. 9, 1994.

An Appeal from the District Court of Seminole County Before Gordon R. Melson, District Judge.

Rob L. Pyron, Kursten Remer, Seminole, for appellant at trial.

William N. Peterson, Dist. Atty., Joseph F. Wilson, Asst. Dist. Atty., Wewoka, for appellee at trial.

Jamie D. Pybas, Asst. Appellate Public Defender, Norman, for appellant on appeal.

Susan B. Loving, Atty. Gen., A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## *OPINION*

PER CURIAM.

Jerald Wayne Harjo, Appellant, was tried by jury for Murder in the First Degree, in violation of 21 O.S.Supp.1982, § 701.7 (Count I); First Degree Burglary, in violation of 21 O.S.1981, § 1431 (Count II); Burglary of an Automobile, in violation of 21 O.S.1981, § 1435 (Count III); Rape, in violation of 21 O.S.Supp.1983, § 1111 (Count IV); and Larceny of an Automobile, in violation of 21 O.S.1981, § 1720 (Count V) in Seminole County District Court, Case Nos. CRF–88–7 and CRF–88–8. Each of the non-capital counts were charged after former conviction of a felony. *See* 21 O.S.1981, § 51.

The jury acquitted Appellant of rape and returned a verdict of guilty on each of the other counts. Following the second stage of trial the jury set punishment at sixty (60) years for Count II, thirty (30) years for Count III, and fifteen (15) years for Count V. For Count I, after finding both of the aggra-

vating circumstances charged in the Bill of Particulars: that the murder was especially heinous, atrocious and cruel, and that the murder was committed to avoid lawful arrest or persecution, the jury recommended a sentence of death. The trial court imposed each sentence set by the jury. We affirm judgment and sentence.

Late Saturday night, January 16, 1988, after 24 hours of drinking beer and vodka, Appellant rode his nephew's bicycle in the rain past the home of sixty-four year old Ruth Porter. He abandoned the bike at the side of the road. Parked in Mrs. Porter's driveway, were a van and a 1972 Ford Mustang. Appellant took a screwdriver from the van. He then took two cinder blocks and piled them under a back bedroom window. After using the screwdriver to remove the screen, he entered Mrs. Porter's home.

He found a pillowcase and tore two eye holes in it with his teeth. Wearing the pillowcase he went into Mrs. Porter's bedroom. When she woke up the appellant got scared and put a pillow over her face. He also strangled her with his hands. At some point Appellant burned her pubic hair with a lighter. After killing Mrs. Porter, the appellant took the keys to her car, and drove it to his brother's home where it was found by the Wewoka Police Officer Blankenship that afternoon. The police were looking for Mrs. Porter's car, for her dead body had been discovered and reported by her son-in-law.

Officer Blankenship questioned the appellant at his brother's home after giving him the standard *Miranda* warning. Appellant told a second officer he didn't take the car, but he knew who did and would write their names on a piece of paper. Appellant wrote the names "Karen and David Harrod". A roadblock was set, but the Harrods were never located. County Sheriff Jerald Sisco arrived and took the Appellant to the sheriff's office for questioning as a material witness. At the sheriff's office Appellant was again given the standard *Miranda* warning and he signed a waiver of rights. Sheriff Sisco began questioning the appellant at about 1:00 p.m. Sunday and Appellant confessed to the crimes some four hours later.

## PRETRIAL ISSUES

A suppression hearing was held following defense counsel's motion to suppress the confession. The trial court found Appellant's confession to be knowing and voluntary and thus admissible at trial. Appellant challenges this ruling on two grounds: (1) that the confession was coerced by the police; and (2) that the combined effects of alcohol consumption, low intelligence and the generally coercive atmosphere of the police station rendered the confession involuntary and unknowing.

▪ In a suppression hearing the State bears the burden to show by a preponderance of the evidence a confession is knowing and voluntary. *Hardin v. State*, 649 P.2d 799 (Okl.Cr.1982); *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). On appeal the trial court ruling of admissibility will be upheld if the record as a whole supports it. *Smith v. State*, 736 P.2d 531 (Okl.Cr.1987).

▪ The trial court had before it uncontroverted evidence to establish petitioner's mental state: (1) he had consumed considerable amounts of beer and vodka over the 48 hour period prior to his confession, and (2) his IQ placed him in the border between low intelligence and retardation. Uncontroverted evidence also established the appellant (1) had been given the *Miranda* warnings twice, (2) understood the questions asked of him, and (3) understood the importance of his answers. We have listened to the audio tape of the interview and confession which was reviewed by the trial court. We are satisfied the appellant responded rationally and with understanding to questions posed by the sheriff. The trial court did not err in finding the appellant's confession was knowing in spite of his consumption of alcohol and low intelligence. *See Phillips v. State*, 650 P.2d 910 (Okl.Cr.1982); *Yeager v. State*, 742 P.2d 575 (Okl.Cr.1987).

▪ Having determined the confession was knowing, we must also determine whether it was voluntary. We have examined the record to determine whether the police engaged in coercive tactics; that is over-

reaching, or exploitation of the appellant's mental state. Coercion is that which overcomes the will of the confessor, and necessarily includes police overreaching. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Appellant would have this Court hold the mere act of questioning at the sheriff's office is evidence of coercion. Such a holding is not tenable for it would strip the police of a necessary investigation tool, and it has been rejected by the United States Supreme Court. *Colorado v. Connelly,* 479 U.S. at 167–69, 107 S.Ct. at 522.

Overreaching has been found and condemned where the police exploit an accused's reduced mental state. *Lee v. State*, 700 P.2d 1017 (Okl.Cr.1985); *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). However, no evidence of exploitation or overreaching is present in the record before us. We find the trial court did not err by finding Appellant's confession to be knowing and voluntary, and thus admissible.[1]

Appellant continues the challenge to admission of his confession by arguing his waiver of the right to silence is invalid due to his consumption of alcohol and his low intelligence. He contends he was not aware of "the nature of the right being abandoned or the consequences of the decision to abandon it". We look to the totality of the record to determine this question. *See Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

As we have explained, the appellant used the opportunity to talk to the police to present his theory of defense: that David Harrod committed the murder. His elaborate fabrication indicates he was well aware of the consequences of talking to the police. Under the totality of these circumstances, we find the trial court correctly held the confession was knowing and voluntary and need not be suppressed.

Appellant filed a Motion in Limine to suppress introduction of his gym shoes into evidence. The size and tread of his shoes were a perfect match to footprints found in and around Mrs. Porter's home. The trial court overruled the Motion finding the officers had probable cause to seize the shoes, and the appellant consented to the seizure. Appellant argues on appeal the seizure was not voluntary and the mere existence of probable cause does not justify a warrantless seizure. The State proffers alternate grounds to support the warrantless seizure: inevitable discovery, and search incident to arrest.

This presents a very interesting question which requires a rather detailed understanding of the surrounding facts. An investigator at the crime scene called Sheriff Sisco to report a single set of footprints had been discovered in and around the Porter home. These footprints revealed the distinctive tread pattern of "Winner's Choice" gym shoes. After taking the call in another room, Sheriff Sisco returned to the appellant and said:

**Sisco:** Jerald let me see one of your shoes. Is those the shoes you had on last night?

**Harjo:** Huh-ah

**Sisco:** Just take it off. What kind of shoes did you have on last night?

**Harjo:** (inaudible) tennis shoes on.

**Sisco:** Where are they at?

**Harjo:** (inaudible)

**Sisco:** Up here Johnny Ray or down at Sasakwa?

**Harjo:** Yeah.

**Sisco:** Are they like these?

**Harjo:** No, huh-ah.

**Sisco:** What are they like?

**Harjo:** They're about, they are alot different from these right here.

Appellant then gave Sheriff Sisco his shoe.

The facts expose the weakness in the analysis of both parties. If, as the State suggests, the seizure of the appellant's shoe occurred incident to a lawful arrest, the appellant must, of course, have been under arrest at the time of the seizure. The record establishes he was not.

---

1. This issue of voluntariness properly was submitted to the jury at the close of the first stage of trial.

The State argues in the alternative the shoe inevitably would have been discovered when Appellant was booked into jail. Inevitable discovery is a narrowly carved exception to the warrant requirement. It recognizes the deterrence purpose of the exclusionary rule is not well served if evidence discovered through illegal police means would inevitably been discovered through legal means. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Thus, the State's position raises two hurdles which it must clear. The first is that the seizure was illegal. The second is that in the normal course of the police investigation the shoe would have been discovered, even absent, what the State apparently believes to be, illegal conduct.

Assuming for the sake of argument that the State can clear the first hurdle, the issue of inevitability remains. At the time of the seizure the appellant was only a material witness. Any belief asserted by the State that the appellant would not have been allowed to go free following questioning is mere speculation. Had the shoe not been seized, there is nothing in the record to suggest the appellant would not have stuck to his story about the "Harrods" and been allowed to go home. The record does not support a finding that arrest, and thus discovery of the shoe, was inevitable.

Looking next at the appellant's position, the record supports the claim he did not consent to the seizure of his shoe. At most he acquiesced. Acquiescence does not waive the Fourth Amendment privilege to be free from unreasonable searches and seizures. *See United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *United States v. Pritchard,* 645 F.2d 854 (10th Cir.1981). We are therefore squarely within the scope of the Fourth Amendment and Article 2, Section 30 of the Oklahoma Constitution. We must determine whether the appellant was subjected to an unreasonable search or unreasonable seizure.

The appellant does not dwell on the *search* aspect of this question, and neither do we. In fact, we find no search was involved at all. The appellant willingly exposed his shoes to public view by wearing them. Such free and willing exposure negates any privacy interest which might attach to the shoes. Therefore, any observation of Appellant's shoes by the police is not a search and outside the scope of the state and federal constitutions. *See* accord, *State v. Badger,* 141 Vt. 430, 450 A.2d 336 (1982).

Had Sheriff Sisco merely looked at the bottom of the appellant's shoes, we might stop here. However, Sheriff Sisco did not stop here; he seized the shoe. Therefore, distinct and apart from the visual inspection which is not a search, we must determine whether this warrantless *seizure* offends the Fourth Amendment or the Oklahoma Constitution. *See* Okla. Const. art. 2 § 30.

Analysis of this question begins with the presumption that a warrantless seizure is *per se* unreasonable unless it fits within a recognized exception to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *Case v. State,* 519 P.2d 523 (Okl.Cr. 1974), *cert. denied* 431 U.S. 965, 97 S.Ct. 2922, 53 L.Ed.2d 1061 (1977). Recognizing legitimate law enforcement needs, warrantless seizure is permissible when the police have probable cause to believe the item seized is evidence of a crime, *and* exigent circumstances sufficient to justify immediate seizure are present. *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

The first analytical prong was expressly found by the trial court and is amply supported by the record. The footprints were the only ones found at the crime scene. The appellant admitted being in the Porter home but claimed David Harrod, who wore cowboy boots, murdered Mrs. Porter while he watched. Probable cause in this context is that which makes more probable than not the item seized is evidence of a crime. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Probable cause is satisfied here for identification of the shoe which left the only footprints at the crime scene would significantly narrow the field of possible suspects.

The trial court did not determine whether exigent circumstances existed sufficient to justify immediate seizure of Appellant's shoe. Therefore, we will examine the record to determine this question. Had the appellant stuck to his story about the "Harrods" and gone home, the shoes or their tread easily could have been destroyed. Given the vulnerability of this evidence, we find sufficient exigent circumstances justified warrantless seizure of the shoe. The trial court correctly overruled the defendant's motion in limine.

 Appellant made a showing under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) that he was entitled to a psychiatric expert. The Court awarded him $750.00.[2] Appellant now claims the trial court deprived him of competent assistance for he was forced to share this amount between three experts. The State points out the weakness in this argument. Defense counsel did not move for additional fees for extraordinary expenses as provided for in Title 22 O.S.Supp.1985, § 464(B). Thus, the bald allegation on appeal is wholly unpersuasive.

 Appellant next asserts the trial court erred in granting the State's Motion to compel him to submit to the taking of body samples. Relying on *Cole v. Parr,* 595 P.2d 1349 (Okl.Cr.1979), Appellant argues the State is barred from seeking body samples until the crime scene evidence has been analyzed. Appellant overstates *Cole,* as well as disregards both *Elix v. State,* 743 P.2d 669 (Okl.Cr.1987) and *Pyle v. State,* 645 P.2d 1390 (Okl.Cr.1982). The State must show the sought-after samples have probative value, and the trial judge must weigh that probative value against the defendant's constitutionally protected expectation of personal privacy and dignity. *Elix,* 743 P.2d at 673. This balance tips in favor of compelling body samples when the State establishes probable cause that the defendant committed the charged crime. *Id.*

The record is not as complete in this regard as we might like. The State asserted in it's Motion the request was based on proba-

ble cause. The request was unopposed. Under these circumstances we cannot say the trial judge erred in finding the probative value of the body samples outweighed Appellant's expectation of privacy and dignity.

### JURY SELECTION

*Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) sets the standard for determining when a venireman should be removed for cause due to the inability to uphold the juror's oath and consider all sentencing options. Appellant complains the trial court removed six veniremen after asking them whether they could recommend the death penalty without "doing violence to their conscience".

Appellant overstates his case, for the record plainly shows the trial judge individually questioned those veniremen who responded with concerns of conscience to determine whether they would be able to follow the court's instructions and uphold their juror's oath. Only those veniremen who stated they could not impose the death penalty under any circumstance were removed for cause. The trial court applied the proper standard, and provided both the defense and prosecution with the opportunity to further question each of these veniremen. This procedure comports with the standard set by *Witherspoon, Id.*

### FIRST STAGE OF TRIAL

 We will first address evidentiary issues. Two photographs of the victim were admitted at trial. One shows Mrs. Porter as she was found by police: on her bed with her nightgown pulled up around her chest and a pillow over her face. The second is of her face. The trial court admitted these photos over defense objection, and sustained the objection as to other photos. Characterizing them as gruesome, ghastly and as having little or no probative value, Appellant argues these pictures were inadmissible. We disagree.

The photo of the corpse accurately portrays the body as it was found shortly after

---

**2.** This was the standard amount allowable at the time under 22 O.S.Supp.1985, § 464(B), which was subsequently repealed and replaced by 22 O.S.Supp.1991, § 1176 effective July 1, 1991.

death and corroborates testimony regarding the cause of death. The photo of Mrs. Porter's face corroborates her identity and shows the extent of her injuries, which was not great. These photographs contain no gratuitous gore, no dramatic enhancement of any kind. *Compare, Jones v. State,* 738 P.2d 525, 528 (Okl.Cr.1987). The trial court correctly determined their probative value outweighed their potential prejudicial effect. *See Thomas v. State,* 811 P.2d 1337 (Okl.Cr.1991); *Nguyen v. State,* 769 P.2d 167 (Okl.Cr.1988).

 Appellant next challenges the admission of hair comparison evidence. OSBI chemist Mary Long testified she had examined sixteen (16) hairs collected from the crime scene and compared them to known hairs of Mrs. Porter and the appellant. One hair was consistent with Mrs. Porter's head hair, one was consistent with her pubic hair. One hair was consistent with the appellant's head hair, five were consistent with his pubic hair. Appellant challenges the admission of this hair comparison evidence on two grounds: first, that the witness overstated the identification value of this evidence; and second that hair comparison evidence generally is highly prejudicial and not scientifically reliable.

This Court set a bright line beyond which lies reversible error in *McCarty v. State,* 765 P.2d 1215 (Okl.Cr.1988). In that case, the State's witness emphatically placed the defendant at the crime scene based on her hair comparison analysis. The Court made clear that while hair comparison evidence is admissible, the legitimate conclusions which may be drawn from it are limited. The State's witness in the present case did not overstate the conclusions which could be drawn from consistent hairs, and plainly said hair comparison can not be used for identification. Ms. Long stayed well within the boundaries set by *McCarty.*

This Court expects the limits of hair comparison evidence to be exposed by cross-examination. We find no reason at this time to accept the appellant's invitation to reconsider the admissibility of this evidence. *See Williamson v. State,* 812 P.2d 384, 405 (Okl.Cr.1991). We find the trial court properly admitted this evidence.

Whether the State introduced sufficient evidence to prove "malice aforethought", an essential element of the crime of first degree murder, is also challenged. Appellate counsel urges the appellant placed the pillow over Mrs. Porter in "confusion and panic, exacerbated by his consumption of alcohol and lack of sleep ..." The State counters by arguing sufficient premeditation to murder can be formed in an instant, and as Mrs. Porter struggled during the strangulation prior to her death, the appellant made a conscious decision to kill.

 Evidence of frame of mind is almost always circumstantial, as it was in this case. Circumstantial evidence will be found sufficient upon appellate review when it rules out every reasonable hypothesis except that of guilt. *Riley v. State,* 760 P.2d 198 (Okl.Cr. 1988). Appellant performed a logical series of methodical acts which belie the picture painted by counsel. More importantly, by his own admission Appellant killed Mrs. Porter after she awoke and he became scared. This evidence is sufficient to rule out every reasonable hypothesis except that the appellant was sufficiently rational to form an intent to kill, and in fact did so.

Five instances of alleged prosecutorial misconduct are next asserted as reversible error. The alleged error comes from (1) defining reasonable doubt, (2) seeking sympathy for the victim, (3) giving personal opinions of guilt and evoking societal alarm, (4) misstating evidence, and (5) unfairly bolstering his case by reading a large portion of the appellant's confession in closing argument.

During *voir dire* the trial judge discussed the meaning of reasonable doubt with the veniremen. It is this explanation which the prosecutor repeated during his own voir dire. The record does not support counsel's allegation that the prosecutor poisoned the jury with his own definition of reasonable doubt.

The alleged appeal for sympathy is nothing more than the reiteration of certain uncontroverted facts. Mrs. Porter was sixty four years old when she was killed. She struggled briefly for her life. She was found by her son-in-law who kept his wife and children from seeing her, semi-nude and strangled on

her bed. The prosecutor is under no obligation to shrink from the facts of a case just because they are poignant. In arguing the facts, the prosecutor stayed well within the boundaries of proper comment.

 The prosecutor exceeded proper comment when he repeatedly expressed his personal opinion of the appellant's guilt and urged the jury that justice demanded guilty verdicts. These comments passed without contemporaneous objection, and thus are reviewed for plain error only. *Staggs v. State,* 804 P.2d 456 (Okl.Cr.1991); *West v. State,* 764 P.2d 528 (Okl.Cr.1988).

 This conduct is improper and reprehensible. Even the State apparently believes the prosecutor went too far, for while it sets forth lengthy statements of general principles of law it scrupulously avoids applying that law to the comments actually made. If the purpose of appellate review were to punish the excesses of a prosecutor, this case might well have a different outcome. However, the purpose of plain error review is to determine if error denied the appellant a right essential to his defense. *Staggs,* 804 P.2d at 457.

We can say with certainty these comments did not deny the appellant such a right, for the jury did not follow them. The prosecutor stated the appellant was guilty of all five counts, including rape, and that justice required returning a verdict of guilty to all five counts. The jury was not swayed by the prosecutor's personal brand of justice for it acquitted the appellant of the rape charge. Knowing, as we do, that the jury was not bullied by the prosecutor's improper comments, we find these comments to be harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

 During closing argument in the first stage of trial the District Attorney read some nine pages of the transcript of Appellant's confession. Appellant argues this was unfair bolstering of the evidence. As no contemporaneous objection was made, we will once again review for plain error only. *Price v. State,* 782 P.2d 143 (Okl.Cr.1989).

Appellant supports his position with *United States v. Sullivan,* 919 F.2d 1403, 1425 (10th Cir.1990). This reliance is misplaced. In that case the Tenth Circuit found error where a prosecutor read from a transcript of an almost inaudible audio tape. The transcript had not been introduced into evidence, and the reliability of the transcript had not been established. *Id.* Such is not the case here. Appellant directs this Court to nothing which requires reversal for plain error on this ground.

Misstatement of evidence concerning the hair comparison and serological evidence is the next misconduct alleged by the appellant. These statements were not objected to, and so are also subjected to plain error review only. *Trim v. State,* 808 P.2d 697 (Okl.Cr. 1991). The record plainly shows the prosecutor argued inferences from the evidence and did not misstate it. There is no merit to this argument.

Appellant next asserts six (6) ways in which his trial counsel fell below the standard of reasonable competence established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The State responds only generally, stating it will not respond to specific allegations of incompetence unless ordered to do so by the Court.

 Returning to the issue, we are guided in our analysis of possible ineffective assistance of counsel by *Strickland.* To meet the burden of proving ineffective assistance the appellant must prove both that trial counsel's performance fell below that of a reasonably competent trial attorney, and that he suffered prejudice thereby. 466 U.S. at 694, 104 S.Ct. at 2069. The appellate court is to give great deference to trial counsel's performance and begin its analysis with a presumption of competence. 466 U.S. at 689, 104 S.Ct. at 2065.

Appellant first attacks the effectiveness of an attorney who did not investigate the case and who withdrew from representation prior to trial. Appellant's only assertion of prejudice is that subsequent counsel were forced to work under "impossible time constraints" of thirty-one (31) days to prepare for trial. This issue necessarily piggy-backs onto the second allegation of ineffectiveness which is

that trial counsel failed to request a continuance of the trial date.

We find nowhere in the record any evidence to support Appellant's allegation that this period of time was insufficient for counsel to prepare for trial. We find no *per se* rule which requires such a conclusion. Therefore, we find Appellant has not carried his burden of showing prejudice.

■■ The third allegation of ineffectiveness is counsel's failure to rehabilitate the six (6) veniremen who were removed for cause after they stated they could not impose the death penalty under any circumstance. Just as we have admonished the appellee to tie its argument to the facts, we likewise admonish Appellant's counsel. The record could not be clearer in this regard: each of the excused veniremen had been thoroughly questioned by the trial judge who made clear throughout the record that mere reservation about the death penalty did not disqualify one from service, and each stated explicitly that under no circumstance could he or she impose the death penalty. These veniremen were properly removed under *Witherspoon.* Defense counsel did not fall below the standard of reasonable effectiveness by failing to question them further after each emphatically stated unwavering opposition to the death penalty.

The fourth incident of alleged ineffectiveness is the failure to object to certain remarks by the prosecutor. We have found the prosecutor erred when he expressed his personal opinion as to the defendant's guilt and when he argued justice would be served only by the return of a guilty verdict. Certainly the better practice would have been for defense counsel to object to these remarks. However, inasmuch as the error occasioned by these remarks has been found to be harmless beyond a reasonable doubt, Appellant has not carried his burden to show prejudice for the failure to object to the remarks at trial.

Defense counsel did not request an instruction on First Degree Manslaughter. This, Appellant now argues, is the fifth incidence of ineffectiveness. Using *Williams v. State,* 513 P.2d 335 (Okl.Cr.1973), he argues an instruction on First Degree Manslaughter

is warranted whenever there is evidence of intoxication. The State argues an instruction on First Degree Manslaughter was not warranted, for no evidence of impairment from intoxication was presented. Each party's argument is troubling. Appellant pushes *Williams* beyond its facts, and the State ignores the fact the trial court did find sufficient evidence of impairment to warrant an instruction on Second Degree Murder.

■■ Appellant overstates the holding of *Williams v. State,* 513 P.2d 335 (Okl.Cr.1973) arguing it requires an instruction on First Degree Manslaughter whenever evidence of intoxication is present. When we examine *Williams* in the context of its facts, it is evident the instruction on First Degree Manslaughter was supported by the evidence but refused by the trial court. 513 P.2d at 338–39. In the present case the evidence did not support such an instruction. No evidence suggested Appellant killed Mrs. Porter while committing a misdemeanor, in the heat of passion, with a dangerous weapon, or while resisting her attempt to commit a crime. *See,* 21 O.S.1981, § 711; *see also, Brown v. State,* 777 P.2d 1355 (Okl.Cr.1989). Under these facts, the trial court properly did not instruct on First Degree Manslaughter. Counsel's failure to request an instruction on First Degree Manslaughter is not evidence of ineffective assistance.

In his final assertion of ineffective assistance Appellant argues defense counsel failed to investigate, develop and present mitigating evidence to rebut these aggravating circumstances. Appellate counsel further faults trial counsel for presenting mitigating factors which "were merely arguments concerning the aggravating circumstances". While this is an issue which impacts on the second stage of trial, we will address it here.

In the sentencing stage of trial the State alleged, and the jury found, two aggravating circumstances to support its request for the death penalty: that the murder was especially heinous, atrocious and cruel; and that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. 21 O.S.1981, §§ 701.12(4) and (5).

Trial counsel must defend a criminal defendant without the luxury of hind sight. It is for this reason that counsel is presumed competent under the *Strickland* analysis, and that this Court will not second guess counsel's trial strategy. *Jones v. State*, 781 P.2d 326 (Okl.Cr.1989). Election not to present mitigating evidence, without more, is not evidence of ineffectiveness. *Coleman v. State*, 693 P.2d 4, 7 (Okl.Cr.1984). While Appellant baldly asserts there exists a "substantial probability" the jury would have sentenced him to life imprisonment if only it had more evidence regarding the appellant's upbringing. If such mere speculation were sufficient to carry Appellant's burden, any trial counsel whose client was sentenced to death would be found to have been incompetent. It is such a result that *Strickland* forecloses. Appellant has not carried his burden to prove ineffectiveness.[3]

## SENTENCING STAGE

Alleged error in the second stage of trial centers on issues of evidence and jury instruction. We first address the evidentiary issues.

When the State seeks the death penalty it bears the burden to prove each asserted aggravating factor beyond a reasonable doubt. 22 O.S.1981, § 701.11. Appellant asserts the State did not present sufficient evidence to prove either of the two aggravating factors charged by the State and found by the jury: (1) that the murder was heinous, atrocious, or cruel; and (2) that the murder was committed to avoid lawful arrest and prosecution.

We begin with the clear understanding that not all murders warrant the death penalty. The Eighth Amendment requires this ultimate penalty to be applied only to that class of murders which is most egregious. *Maynard v. Cartright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

In the present case, the appellant strangled and suffocated Mrs. Porter with his bare hands. She sustained scratches and bruises on her face, chest, arms and vaginal area. Her lower denture was displaced; her windpipe crushed. Her pubic hair was singed. Mrs. Porter struggled prior to her death. This evidence is sufficient to support the jury's finding the murder was especially heinous, atrocious or cruel. *See Thomas v. State*, 811 P.2d 1337 (Okl.Cr.1991), *cert. denied, Thomas v. Oklahoma*, —— U.S. ——, 112 S.Ct. 895, 116 L.Ed.2d 798 (1991); *Williamson v. State*, 812 P.2d 384 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1991).

Appellant levels the same insufficiency challenge at the second aggravator found by the jury: that the murder was committed for the purpose of avoiding lawful arrest. The evidence supporting this factor comes from Appellant's confession. He confessed that when Mrs. Porter woke up he got scared and pushed the pillow over her face. Since Mrs. Porter was unarmed and no physical match for the appellant, the jury fairly could infer he was afraid of being identified by her. The evidence is sufficient to support this aggravating circumstance.

In addition to the murder conviction, the jury found Appellant guilty of three non-capital felonies: first degree burglary, larceny of an automobile and burglary of an automobile. Due to the fact the State sought enhanced punishment under the Habitual Offender Act, sentencing for these crimes took place in the second stage of trial. To support enhanced punishment, the State introduced evidence of a prior felony conviction for second degree burglary. 21 O.S.1981, § 51.

Appellant argues he was prejudiced by the fact the jury was thus aware of his former conviction when they considered his sentence for murder; an awareness they would not have had if the sentences for the non-capital

---

3. Appellant reurges his argument here that counsel was ineffective for failing to request an instruction on first degree manslaughter. Inasmuch as we have addressed this issue, we do not comment further.

crimes were not before the jury at the same time. He claims the sentencing procedure allowed the jury to be poisoned with the knowledge of his prior felony conviction when it considered the death penalty.

Appellant cites no Oklahoma law on this issue, and indeed we find none. For reasons not clear he argues in favor of the New Mexico approach in which the non-capital crimes are sentenced *first* so that the jury can consider punishment already levied as mitigation. *State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990). Prior sentencing would not shield the jury from knowledge of prior felony convictions.

Within the context of trial we find the integrity and reliability of the sentencing procedure remained intact. The prosecutor presented the evidence as applying to the non-capital counts only; and the trial court instructed the jury separately for the capital and non-capital counts. The jury was thoroughly instructed on the necessity of a unanimous finding for at least one aggravating factor in order to impose the death penalty. Given this clear instruction, and the fact that the prior conviction for second degree burglary is irrelevant in the finding of either of the aggravating factors present in this case, we find the jury's knowledge of the prior felony conviction had no impact on the imposition of the death sentence.

Appellant next argues the so-called "anti-sympathy" instruction together with the prosecutor's comments on his mitigating evidence create a reasonable likelihood the jury refused to consider, as a matter of law, relevant mitigating evidence. This argument is not supported by the record. The trial court instructed the jury as follows:

... You should not let sympathy, sentiment, or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously, and faithfully under your oaths and return such verdicts as the evidence warrants when measured by these instructions. (Instruction # 48 First Stage)

You are reminded that you shall not allow sympathy, sentiment or prejudice to affect your deliberations, but shall do your duty as jurors impartially and faithfully as you swore you would do. (Instruction # 9 Second Stage)

Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The Determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case. (Instruction # 7 Second Stage)

The so-called "anti-sympathy" instruction given in stage one of trial has been expressly approved by this Court. *See Fisher v. State*, 845 P.2d 1272 (Okl.Cr.1992) *cert. denied* — U.S. ——, 113 S.Ct. 3014, 125 L.Ed.2d 704 (1992); *Stiles v. State*, 829 P.2d 984, 994–995 (Okl.Cr.1992); *Fox v. State*, 779 P.2d 562, 574–575 (Okl.Cr.1989), *cert. denied* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777. The definition of mitigating circumstances is a correct statement of law. *See Woodruff v. State*, 846 P.2d 1124 (Okl.Cr.1993); *Duvall v. State*, 825 P.2d 621 (Okl.Cr.1991), *cert. denied*, — U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992). We find no error here.

The prosecutor's argument against the mitigating evidence went to the weight of the evidence, and in no way limited what evidence the jury could consider. This is proper argument. *See Pickens v. State*, 850 P.2d 328 (Okl.Cr.1993); *Stiles v. State*, 829 P.2d 984 (Okl.Cr.1992).

Appellant next complains of insufficient notice of the witnesses and evidence the State would use to prove the aggravating circumstances. Specifically he claims the notice informing him the State "will adopt and reintroduce evidence presented in the guilt stage of trial" is not sufficient.

At trial the trial judge asked defense counsel if he had any objections to the introduction of this first stage evidence. Counsel replied that except for the right to demurrer to the evidence, he had no objection to its admission. In so doing counsel did not preserve this alleged error for consideration on appeal, and it is waived. *Hayes v. State*, 845 P.2d 890 (Okl.Cr.1992); *Williamson v. State*, 812 P.2d 384 (Okl.Cr.1991); *cert. denied*, — U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308

(1991); *reh'g. denied* —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1991).

In his final second stage evidentiary argument the appellant argues the trial court denied him the right to present relevant mitigating evidence. Specifically the appellant wrote a letter expressing remorse which counsel wanted to introduce into evidence in the second stage. The trial court sustained the State's objection on the grounds it would not be subject to cross-examination. The trial court also indicated the letter might be read in closing argument. The letter was not read during closing, and the letter has not been made part of the record before us on appeal. However, it is not the content of the letter which controls it's admissibility.

Appellant concedes the Oklahoma Evidence Code does not allow admission of this letter. Citing *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) he argues that by following State statutory law, the trial court violated his right to due process guaranteed by the Fourteenth Amendment. In *Green* the high Court held exclusion of proffered testimony of a witness that a second defendant confided to the witness that he had killed the victim after ordering defendant to run an errand was relevant to the critical issue of punishment; and thus exclusion of this evidence denied the defendant a fair trial. The Supreme Court characterized as "[p]erhaps most important" to its decision the fact the State had used the proffered testimony against the second defendant to obtain a death sentence in a separate trial.

The case before us is quite different. The criminal defendant has the constitutional right to be heard at his trial. Okla. Const. art. II, § 20. This right is not unburdened, for it is subject to the statutory right of the State to cross-examination. *See* 12 O.S.1981, § 2611; *Coleman v. State*, 600 P.2d 351 (Okl.Cr.1979); *Wilson v. State*, 461 P.2d 980 (Okl.Cr.1969). In the present case the trial court did not deny the appellant his constitutional right to be heard. The trial court simply did not allow the appellant to bypass statutory law and avoid cross-examination. The trial court properly exercised its discretion.

We now turn to those challenges to instruction of the jury regarding the aggravating factors and mitigating circumstances. Appellant first challenges the aggravating circumstance "especially heinous, atrocious or cruel" as unconstitutionally vague, and applied in an unconstitutional manner. Appellant argues the sentencer's discretion was not guided by objective standards. The trial court instructed the jury as follows:

As used in these instructions, the term, "heinous" means extreme (sic) wicked or shockingly evil; "atrocious" means outrageously wicked and vile, "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to or enjoyment of, the suffering of others.

The phrase "especially heinous, atrocious, or curel (sic)" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse.

In order for you to consider the statutory aggravating circumstances (sic) that the murder was especially heinous, atrocious, or cruel you must first unanimously find that the victim's death was preceded by torture or serious physical harm.

It is now well settled in this jurisdiction that this aggravating circumstance, as currently defined and properly limited, passes constitutional muster: it is not impermissibly vague, and it properly channels the discretion of the jury. *See Stouffer v. State*, 742 P.2d 562 (Okl.Cr.1987); *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Rojem v. State*, 753 P.2d 359, 369 (Okl.Cr.1988); *Workman v. State*, 824 P.2d 378 (Okl.Cr.1991), *cert. denied* —— U.S. ——, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992); *Williamson v. State*, 812 P.2d 384 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1991), *reh'g denied*, —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1991), *denial of post-conviction relief aff'd*, 852 P.2d 167 (1992).

Appellant next argues the aggravating circumstance "to avoid lawful arrest or prosecution" created the risk of arbitrary and capricious imposition of the death sentence. Appellant's general argument opposing this ag-

gravating factor has been rejected consistently by this Court, and we find no reason to revisit it at this time. *See e.g., Romano v. State,* 847 P.2d 368 (Okl.Cr.1993); *Berget v. State,* 824 P.2d 364 (Okl.Cr.1991), *cert. denied* ─ U.S. ─, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *Fowler v. State,* 779 P.2d 580 (Okl.Cr.1989), *cert. denied* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1989).

Appellant also argues the trial court had an affirmative duty to instruct the jury it did not have to find the mitigating circumstances unanimously, and that absent this instruction the jury was misled into believing such a finding had to be unanimous. Appellant relies on *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). In that case the jury was instructed it could consider only those mitigating circumstances which were found unanimously, a practice which the Supreme Court found in violation of the Eighth Amendment. We are not convinced by the appellant's speculation that because the jury was instructed it must be unanimous in its finding of aggravating circumstances, it would read into the instruction on mitigating circumstances that a unanimous finding was required as well. There being no facts to support this speculation, we find no merit to this argument.

Appellant also asserts the trial judge should have instructed the jury that it could return a life sentence regardless of what mitigating and aggravating circumstances it found. This argument has been rejected consistently by this Court. *See Romano v. State,* 847 P.2d 368 (Okl.Cr.1993); *Fox v. State,* 779 P.2d 562 (Okl.Cr.1989); *Walker v. State,* 723 P.2d 273 (Okl.Cr.1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

▇ Developing this argument the appellant continues by challenging the trial court failure to instruct the jury on a presumption of life. Appellant's eloquent argument has drifted free from the mooring of the facts of this case. The jurors were instructed the death penalty was authorized only if they unanimously found one or more of the aggravating circumstances, and that if they had a reasonable doubt as to the charges in the Bill of Particulars they must give the defendant

the benefit of the doubt and return a life sentence. The trial court thus set forth the proper standards to guide the jury in its deliberations. The criminal defendant is not entitled to an instruction on the presumption of life. *See Trice v. State,* 853 P.2d 203, 216 (Okl.Cr.1993); *Romano v. State,* 847 P.2d 368 (Okl.Cr.1993); *Battenfield v. State,* 816 P.2d 555, 564 (Okl.Cr.1991), *cert. denied* ─ U.S. ─, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1991); *Duvall v. State,* 825 P.2d 621, 634 (Okl.Cr. 1991), *cert. denied,* ─ U.S. ─, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992).

Appellant further assails the second stage instructions regarding the use of mitigating evidence. He faults the weighing instruction in four respects: (1) as confusing; (2) as failing to require the jury to reduce the mitigating circumstances found to writing; (3) as allowing the jury to ignore the mitigating evidence; and (4) as precluding the jury from considering first stage mitigation.

While we understand zealous representation may compel Appellate counsel to argue issues well settled against the client, in the instant case we are not persuaded by these arguments. The weighing instruction given by the trial court has consistently been found to be adequate to guide the jury in its sentencing deliberations. *See Duvall v. State, Id.; Rojem v. State,* 753 P.2d 359 (Okl.Cr. 1988); *Brogie v. State,* 695 P.2d 538 (Okl.Cr. 1985).

Appellants persistently assert to this Court their view that the jury should be required to reduce to writing the mitigating evidence it finds. However, this is nowhere required by Oklahoma law. *See Woodruff v. State,* 846 P.2d 1124 (Okl.Cr.1993); *Duvall v. State,* 825 P.2d 621 (Okl.Cr.1991), *cert. denied* ─ U.S. ─, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992).

Likewise missing the mark is Appellant's semantic argument that the jurors were allowed to ignore mitigating evidence when they were instructed:

> Mitigating circumstances are those which, in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability or blame ...

The instruction plainly informs the jurors that evidence which they consider to be ex-

tenuating or reducing the degree of culpability or blame is by definition mitigating. The instruction expands the universe of possible mitigating evidence; it does not invite the jury to ignore the mitigating evidence before it.

Appellate argument which is not grounded in the facts of the case is never persuasive. Such is the case of Appellant's charge that the trial judge instructed the jury in a way that it was precluded from considering first stage mitigation evidence.

Defense counsel moved to incorporate all of the defense first stage evidence into the second stage proceeding. The trial court at that time advised the jury that all first stage evidence "can and should be considered by you in this second stage proceeding." The first stage evidence was thus introduced into the second stage of trial. Thus the instruction to the jury that it was "authorized to consider only the evidence received here in open court presented by the state and the defendant during the sentencing phase of this proceeding" was both a correct statement of law, and did include the first stage evidence incorporated into the second stage.

■ In his final argument the appellant asserts in a conclusory way the evidence in mitigation outweighed the aggravating factors and thus this Court should vacate the sentence of death. It is not the function of the appellate court to weigh this evidence *de novo*. Rather we look to the record to determine whether the jury's decision is supported by the facts and law of the case. *See, Johnson v. State*, 731 P.2d 993 (Okl.Cr.1987), *cert. denied* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987); *Jones v. State*, 648 P.2d 1251 (Okl.Cr.1982).

Two aggravating factors were supported by the evidence: that the murder was especially heinous, atrocious, or cruel; and that the murder was committed to avoid lawful arrest and prosecution. The mitigating evidence produced at trial included the defendant's: (1) age and possibility of rehabilitation; (2) history of alcohol and drug abuse; (3) impaired mental capacity; (4) non-violent history; (5) role in support of his family; and (6) the nature of the killing which did not involve torture. The record supports the jury's decision to recommend a sentence of death.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.Supp.1981, § 701.12. We find no indication in the record that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. As we have discussed above, the evidence is sufficient to support the two aggravating circumstances found by the jury: (1) that the murder was especially heinous, atrocious or cruel; and (2) the murder was committed to avoid lawful arrest and prosecution.

Finding no basis for reversal or modification, judgment and sentence is **AFFIRMED.**

LUMPKIN, P.J., specially concurs.

JOHNSON, V.P.J., concurs in result.

STRUBHAR, J., concurs.

LANE, J., dissents.

CHAPEL, J., joins in the dissent of Judge LANE.

LUMPKIN, Presiding Judge, specially concurring.

I concur in the affirmance of the convictions but write separately to address the following issues. In reviewing Appellant's challenge to the sufficiency of the evidence supporting the murder conviction, the record shows the proof presented at trial consisted of both direct and circumstantial evidence. Therefore the proper standard of review is that set forth in *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985); whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the essential elements of the crime beyond a reasonable doubt. *Moore v. State*, 788 P.2d 387, 400 (Okl.Cr. 1990). Direct evidence of Appellant's guilt

came from his own admission that, while wearing a pillow case over his head, he placed a pillow over the victim's face and kept it there despite her struggle to resist. See *Nichols v. State,* 418 P.2d 77, 84 (Okl.Cr. 1966). While Appellant argues he did not intend to kill the victim but "just got carried away," the "intent" to commit an offense can be inferred from the surrounding circumstances. *Robedeaux v. State,* 866 P.2d 417, 429 (Okl.Cr.1993). Here, the jury could reasonably infer, from all the facts and circumstances, the existence of a premeditated design or intent to kill.

Further, the evidence supporting the aggravating circumstance of especially heinous, atrocious or cruel clearly shows the death of the victim was preceded by serious physical abuse or torture. The medical examiner testified the victim had bruises on her neck and chest, her lower dentures were out of place, she had scratches on her wrists and lips, scratches and bruises were present around her vagina. All of these injuries had been sustained by the victim prior to her death. The victim ultimately died from asphyxia caused by smothering or a combination of smothering and strangulation. The fatal wound occurred when the victim's thyroid cartilage was fractured. The victim also had pinpoint hemorrhages in her eyes, a common finding supporting the asphyxiation finding. Appellant even admitted the victim struggled and fought for her life. Death by suffocation is not an instant death. It consists of both serious physical and mental abuse. A struggle to grasp the next fleeting breath of needed oxygen, while at the same time being mentally and emotionally traumatized by a conscious realization that life is being drained from the body by that deprivation of air. A close examination of this evidence supports the jury's finding that the murder was especially heinous, atrocious or cruel.

LANE, Judge, dissenting.

When the State seeks the death penalty it bears the burden to prove each asserted aggravating factor beyond a reasonable doubt. 22 O.S.1981, § 701.11. I must dissent to that part of the majority opinion which finds sufficient evidence to support the aggravating circumstance, "especially heinous atrocious or cruel" and which affirms the sentence of death. I believe the evidence is not sufficient to support this aggravating circumstance, and I would reverse the sentence and remand for resentencing.

I begin with the clear understanding that not all murders warrant the death penalty. The Eighth Amendment requires this ultimate penalty to be applied only to that class of murders which is most egregious. *Maynard v. Cartright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

When I search for a principled application of the law in this most difficult area, I recognize certain unchanging factors. All murder is accomplished by physical abuse of some kind. Almost all persons in apprehension of death, whether natural, accidental or homicidal, struggle in some way as death overtakes them. From a societal point of view I recognize the communities of this state are confronted all too often with senseless murders, particularly of our older citizens. These murders offend the framework of our social order in a most fundamental way and most seriously test our resolve to apply the law of capital murder in a principled and constitutional manner.

The "especially heinous, atrocious and cruel" aggravating factor has been considered thoroughly by three appellate courts: the court of last resort for criminal matters in this state: the Oklahoma Court of Criminal Appeals, the Tenth Circuit Court of Appeals, and the ultimate court of last resort: the United States Supreme Court. *See, Cartwright v. Maynard,* 822 F.2d 1477 (10th Cir. 1987); *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987); *Foster v. State,* 779 P.2d 591 (Okl.Cr.1989); *Battenfield v. State,* 816 P.2d 555 (Okl.Cr. 1991). Each court recognizes there exists within this aggravating factor a great potential for abuse. This is so for every murder is at some level heinous, atrocious or cruel. The potential for abuse of this factor is so

great that its own integral limitation to those murders which are especially heinous, atrocious or cruel is not sufficient to channel the jury's discretion within constitutional bounds. *Cartwright,* 486 U.S. at 363–364; 108 S.Ct. at 1859.

Limitation sufficient to satisfy the rigors of the Eighth Amendment was articulated by this Court in *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987). This factor may be considered by the jury only if the jury first finds the murder was accomplished through torture or serious physical abuse. *Stouffer,* 742 P.2d at 563 (Opinion on Rehearing), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *see also Foster v. State,* 779 P.2d 591, 593 (Okl.Cr.1989) *cert. denied* 497 U.S. 1032, 110 S.Ct. 3293, 111 L.Ed.2d 801 (1990); *Battenfield v. State,* 816 P.2d 555, 565 (Okl.Cr.1991).

The carefully chosen terms, "torture or serious physical abuse", will effectively channel jury discretion only if this Court holds the levee against the ever present flood of human emotion. All channeling effectiveness of the term "serious physical abuse" will be lost if it's application is liberalized to include *any* physical abuse. Well defined constraint is thus the keystone to constitutionality.

As we have been called upon to examine the condition of "serious physical abuse", we have found it to be supported by facts revealing the manner of killing, the killer's attitude, and the suffering of the victim. *See Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984); *Williamson v. State,* 812 P.2d 384 (Okl.Cr.1991). Of central importance to the constitutionality of the death penalty in Oklahoma, is the fact that in no case has this Court approved the finding of serious physical abuse in the absence of gratuitous violence—acts of injury or cruelty beyond the scope of the act of killing itself. But even gratuitous violence alone will not support this aggravating circumstance. Only gratuitous violence which causes conscious suffering by the victim will support a finding that the murder was especially heinous, atrocious or cruel. This is perhaps best illustrated by *Battenfield v. State,* 816 P.2d 555 (Okl.Cr.1991), reh'g denied 826 P.2d 612, *cert. denied* —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992).

Review of capital murder jurisprudence in this State makes clear to me that "manner of killing" refers to acts of gratuitous violence and not *per se* to the mode of killing. In the present case the appellant strangled and suffocated Mrs. Porter with his bare hands. Two recent cases in which this Court affirmed the finding of serious physical abuse in murder by strangulation provide important contrast to the present case.

In *Thomas v. State,* 811 P.2d 1337 (Okl.Cr. 1991), *cert. denied, Thomas v. Oklahoma,* —— U.S. ——, 112 S.Ct. 895, 116 L.Ed.2d 798 (1991) the victim was beaten, then strangled. Her nasal bone and lower jaw were broken; her eye was nearly pushed out of its socket. In *Williamson v. State,* 812 P.2d 384 (Okl.Cr. 1991) the appellant stuffed a washcloth into the victim's mouth, bruised her body, face and arms, caused small puncture wounds on her face and cuts inside her mouth and lips. He also shoved a bottle cap inside her rectum. These strangulation murders were committed in a manner including gratuitous acts of violence and cruelty. These murders warranted a finding of serious physical abuse sufficient for the jury to consider the aggravating factor "heinous, atrocious or cruel". They are categorically distinct from the murder in this case.

There is no doubt the victim in this case suffered physical abuse. She was suffocated with her pillow and strangled by hand. She sustained minor scratches and bruises on her face, chest, arms and vaginal area. Her lower denture was displaced; her windpipe crushed. The record is devoid of any evidence regarding conscious pain, but common human experience allows one to infer this woman, who was awake and conscious at some point during the attack, had apprehension of death. The appellant confessed she struggled.[1]

---

1. The record is devoid of any evidence regarding pain endured by Mrs. Porter. The majority makes much of the fact appellant singed the victim's pubic hair. The evidence is controverted as to whether this singeing occurred before or after death. Appellant confessed he did this after Mrs. Porter died. The medical examiner testified it occurred prior to death. Unfortunately the

There is no doubt the circumstances surrounding this murder make it heinous. A grandmother was awakened and strangled to death by a young man who wanted to steal her car. The evidence supports the fair inference she had a conscious awareness that her life was being taken. This case evokes a flood of human emotion.

Standing against this understandable flood are the constitutions of this state and nation. Before a jury may find a murder is "especially heinous, atrocious or cruel", the evidence must allow it to find the murder was preceded by torture or serious physical abuse. When I compare this case with those in which serious physical abuse has been found, I am convinced the evidence does not support such a finding by the jury. I believe the majority's holding to the contrary liberalizes death qualification to include any murder by suffocation or strangulation and places Oklahoma again in the unacceptable position criticized and condemned by *Cartwright.* 486 U.S. at 363, 108 S.Ct. at 1895.

Having found one aggravating circumstance to be invalid I would reweigh the remaining aggravating factor, "to avoid arrest or prosecution", to determine whether it outweighs the mitigating evidence to support the death penalty. *Stout v. State,* 817 P.2d 737 (Okl.Cr.1991); *Nguyen v. State,* 769 P.2d 167 (Okl.Cr.1988); *Castro v. State,* 749 P.2d 1146 (Okl.Cr.1987). Given the negligible import placed on this aggravating factor by the prosecutor in the context of trial, I cannot find beyond a reasonable doubt this factor would support the death penalty without the additional and substantial weight of the invalid finding the murder was especially heinous, atrocious or cruel. By the same token, I am unable to state that the jury would not have imposed the death penalty based on the remaining aggravator alone. I would therefore reverse and remand the death sentence to the trial court for resentencing. *Stout v. State,* 817 P.2d at 739; 21 O.S.Supp.1989, § 701.10a.

I am authorized to state Judge CHAPEL joins in this dissent.

issue was not developed by cross-examination, so we are not told how the medical examiner could know whether the singeing occurred pre or post

## ORDER DENYING REHEARING

Jerald Wayne Harjo, Petitioner, was tried by jury and convicted of Murder in the First Degree, First Degree Burglary, Burglary of an Automobile and Larceny of an Automobile, in Seminole County District Court, Case No. CRF–88–7 and CRF–88–8. This Court affirmed judgment and sentence for each count. *See Harjo v. State,* 882 P.2d 1067 (Okl.Cr.1994). Appellant was sentenced to death for the murder, and it is this conviction and sentence which he challenges on rehearing. Specifically the petitioner argues (1) the finding of exigent circumstances sufficient to justify warrantless seizure of his gym shoe is in conflict with controlling authority, and (2) the holding of the Court that the evidence was sufficient to support the jury's finding is in conflict with this Court's prior interpretation of this aggravating circumstance.

We have examined counsel's argument and the authorities cited, and find the opinion handed down in this case is not in error.

**IT IS THEREFORE THE ORDER OF THE COURT** that the Petition for Rehearing be denied, and the Clerk of the Court shall issue mandate forthwith.

**IT IS SO ORDERED.**

/s/ Gary L. Lumpkin
GARY L. LUMPKIN,
Presiding Judge

/s/ Charles Johnson
CHARLES JOHNSON,
Vice Presiding Judge

/s/ James F. Lane
JAMES F. LANE,
Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL,
Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR,
Judge

mortem. There was no evidence of singed skin and thus pain experienced by the victim.

LANE, Judge, dissenting.

I must respectfully dissent to the Order denying rehearing in this case. For reasons fully expressed in my dissent to the original appeal, I believe the evidence is insufficient to support the jury's finding of the "especially heinous, atrocious or cruel" aggravating factor. Therefore, I would grant rehearing, and reverse and remand for resentencing.